Jorge González (CBN 100799)
A PROFESSIONAL CORPORATION
2485 Huntington Drive, Suite 238
San Marino, California 91108
T – 626-382-3081, C – 213-598-3278
E-mail: jggorgeous@aol.com

Alex Coolman (CBN 250911)
3268 Governor Drive #390
San Diego, CA 92122
T: (619) 831-7129
E-mail: coolmana@gmail.com

Attorneys for Plaintiffs ESTATE OF MANUEL VERDUGO,
STACEY VERDUGO, and SACRAMENTO VERDUGO

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ESTATE OF MANUEL VERDUGO; STACY VERDUGO and SACRAMENTO VERDUGO (Individually and as Personal Representatives of the ESTATE OF MANUEL VERDUGO),**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**CITY OF EL CENTRO a municipal entity; SGT. DAMIAN VALDEZ; FERNANDO GARCIA; JANE DOE 2, dispatcher; and DOES 3 through 10, inclusive, both individually and in their official capacities as police officers for the City of El Centro, California.**<br><br>**Defendants.** | **Case No.: CV-20-02458 W (KSC)**<br><br>**FIRST AMENDED COMPLAINT**<br><br>1. **Violation of Due Process Rights under 14th Amendment [42 U.S.C. § 1983];**<br>2. **Violation of 4th Amendment Excessive Use of Force [42 U.S.C. § 1983];**<br>3. **Violation of Federal Civil Rights by Public Entity [42 U.S.C. § 1983;**<br>4. **Violation of Bane Act (Cal. Civ. Code §52.1];**<br>5. **Negligence/Wrongful Death [Cal. Gov. Code § 815.2(a)]**<br>6. **Battery [Cal. Gov. Code § 815.2(a)].**<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

On the morning of Sunday, December 29, 2019, MANUEL VERDUGO, who was mentally ill, took two steak knives from the Rite Aid at Main Street and Imperial Avenue in El Centro without paying for them.  As VERDUGO left the store, an employee asked him to bring back the knives, to which VERDUGO replied that the employee should call the police, and should call "Officer Rodriguez" because "he killed my whole family."  VERDUGO did not threaten to harm a police officer or anyone else.

A manager of the Rite Aid then called 911, reported the theft of the knives, and reported, falsely, that VERDUGO had said he wanted to "kill Officer Rodriguez."

Minutes later, responding to the 911 call, the defendant officers encountered VERDUGO, wandering shirtless in the middle of the intersection immediately adjacent to the Rite Aid, a knife in each hand.  VERDUGO walked away from the officers after they initially encountered him, and seemed indifferent to them. Though VERDUGO posed no immediate threat to anyone, and though the street was almost entirely empty, the defendants rapidly surrounded VERDUGO and killed him in a hail of gunfire, continuing to shoot him even as he staggered and fell to the ground.  Within 45 seconds of the police arriving, VERDUGO was dead. The two shots that killed him hit him in his back and in the back of his neck.

Plaintiffs allege the following:

**JURISDICTION AND VENUE**

1.      Jurisdiction is conferred upon this Court by Title 28, U.S.C. §§ 1331 and 1343, and arises under Title 42, U.S.C. §§ 1983 and 1988, 42 U.S.C. § 12131 et seq., and 29 U.S.C. § 794. This court has supplemental jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367.

2. The incident took place in Imperial County. Venue in this Court is proper under 28 U.S.C. § 1391(b). One or more of the Defendants resides in or has its principal place of business in Imperial County.

3. Plaintiffs filed a timely tort claim against the City of El Centro on June 15, 2020, within six months of the incident. The City denied the tort claim on June 18, 2020.

## PARTIES

4. Plaintiff ESTATE OF MANUEL VERDUGO represents the interests of the Plaintiffs' Decedent, MANUEL VERDUGO, who was 50 years old at the time of his death.

5. Plaintiffs STACEY VERDUGO and SACRAMENTO VERDUGO are the adult daughter and son, respectively, of the Plaintiffs' Decedent, MANUEL VERDUGO. They sue herein both individually on behalf of themselves, and as the personal representatives of the Estate as successors in interest of the Plaintiffs' Decedent, MANUEL VERDUGO. Both were residing in Imperial County at the time of this incident.

6. At all times material herein, Defendant CITY OF EL CENTRO was and is a public entity duly organized and chartered under the laws of the State of California, and was responsible for the hiring, training, and supervising of the conduct of its employees and agents of the CITY OF EL CENTRO, and its Police Department, the EL CENTRO POLICE DEPARTMENT, and all of its officers and members. This Defendant is a "person" and subject to suit within the meaning of Title 42, U.S.C. § 1983 under *Monell v. New York Dept. of Social Serv.*, 436 U.S. 658, 691 (1978).

7. At all times material herein, said Defendant CITY OF EL CENTRO was responsible for the employment, training, and supervision of the actions, conduct, policies, practices, and customs of the employees and agents of the CITY OF EL CENTRO, including its Police Department and all of its members. At all

times material herein, Defendant CITY OF EL CENTRO was responsible for assuring that the actions, conduct, policies, procedures, and customs of the EL CENTRO POLICE DEPARTMENT complied with the laws and the Constitutions of the United States and of the State of California.

8.     Plaintiffs are informed and believe, and based thereon hereby allege that Defendant CITY OF EL CENTRO is responsible for implementing, maintaining, sanctioning, or condoning a policy, custom or practice, under which the wrongful or illegal acts hereinafter complained of occurred.  By reason of this policy, custom or practice, Defendant CITY OF EL CENTRO is liable for the damages hereinafter complained of.  As to the claims filed under the laws of the State of California, Defendant CITY OF EL CENTRO is liable for the damages under the principle of *respondeat superior* (Government Code 815.2(a)).

9.     Plaintiffs are informed and believe, and based thereon allege that at all times material herein, Defendants SGT. DAMIEN VALDEZ and Officer FERNANDO GARCIA, and DOES 2 through 10, inclusive, along with Officers Manuel Meza and Stephen Singh, were each duly appointed and acting police officers employed as such by the Defendant CITY OF EL CENTRO, and at the time of the acts hereinafter complained of, each said Defendant was acting within the course and scope of such employment and under the color of law.  Plaintiffs believe JANE DOE 2 was a female working as a dispatcher for the El Centro Police Department.  Plaintiffs sue each of these Defendants both in their official and individual capacities.

10.     The true names of Defendants DOES 2 through 10, inclusive, are not now known to Plaintiffs who therefore sue said Defendants by such fictitious names, but upon ascertaining the true name of a DOE Defendant, Plaintiffs will amend this complaint, or seek leave to do so, by substituting same for said fictitious name.

FIRST AMENDED COMPLAINT FOR DAMAGES

11.     At all times material herein, the Defendants discussed in Paragraph 9 were acting as the employee, agent representative, and officer of the CITY OF EL CENTRO, and within the course and scope of such employment and agency. Plaintiffs filed a timely Claim pursuant to California Government Code Section 910 et seq. with Defendant CITY OF EL CENTRO on June 15, 2020.  The Claim was denied by the CITY OF EL CENTRO on June 18, 2020, and this action was filed in a timely manner.

## FACTUAL ALLEGATIONS

12.     Plaintiffs' Decedent MANUEL VERDUGO suffered from bipolar disorder, and in late December of 2019 he had been feeling suicidal.

13.     On December 24, 2019, while staying in a motel in El Centro, VERDUGO called 911 to request help because he was feeling suicidal.

14.     Several officers of the El Centro Police Department responded to this 911 call, including Officer Meza, who spoke with VERDUGO at length in VERDUGO's motel room about VERDUGO's mental health, before transporting VERDUGO to the hospital for treatment, pursuant to Welfare and Institutions Code 5150, danger to self or others.

15.     Five days later, shortly before 7:00 a.m. on the morning of Sunday, December 29, 2019, VERDUGO entered the El Centro Rite Aid at Imperial and Main and asked the manager whether the store carried any knives.

16.     The manager showed VERDUGO that the store carried a package of several steak knives, and VERDUGO then opened the package and walked out of the store with two 4" steak knives with serrated blades.  He did not pay for the knives.

17.     Outside the store, VERDUGO spoke briefly with a Rite Aid employee named Victoria, refusing to return to the knives and telling Victoria that she should call "the police" and call an "Officer Rodriguez" because "they killed my family."

18.     The Rite Aid manager then called 911, reported the theft of the knives, and stated, falsely, that VERDUGO had said he was going to "kill Officer Rodriguez."  VERDUGO had said no such thing.

19.     The Rite Aid manager also told the 911 dispatcher Defendant JANE DOE 2 that he was not sure if VERDUGO was "all right in the head."

20.     Over the next few minutes, VERDUGO walked along in the middle of the street in the area of Imperial and Main, shouting to himself and taking off his clothes.

21.     Additional 911 calls occurred in response to VERDUGO's unusual behavior, with callers telling the dispatcher that although VERDUGO was not threatening anybody, he was "yelling to himself," was "walking right in the middle of the street," and was "taking his clothes off."

22.     Defendant JANE DOE 2 did not relay over the radio the manager's comment that he was unsure whether VERDUGO was "all right in the head," and did not relay the fact that VERDUGO was "yelling to himself."  JANE DOE 2 simply relayed that VERDUGO was "yelling," and stated that VERDUGO had expressed an intention to "kill an officer."

23.     Defendant GARCIA and Officers Singh and Meza each drove their own vehicles to the intersection of Imperial and Main, with Singh arriving first, at 7:11:12 a.m., and Meza and GARCIA arriving moments later.

24.     As the officers arrived at the intersection of Imperial and Main Streets, VERDUGO was walking south and slightly eastward in crosswalk, essentially perpendicular to the approach of the officers.  He was shirtless.  He was carrying a steak knife in each hand.  As the officers approached, VERDUGO turned away from them and walked westbound, in the opposite direction of the officers.

25.     There was little traffic in the vicinity of VERDUGO and there were no pedestrians in the area.

26.     Defendant GARCIA and Officer Singh each drew their guns and pointed them at VERDUGO as he walked away from them.  GARCIA, Meza and Singh all simultaneously shouted various commands at VERDUGO.

27.     VERDUGO ignored the defendants, and continued to walk away from them, heading west in the empty eastbound lane of Main Street and, at times, putting his hands up in the air.



28.     Defendant GARCIA and Officer Singh shouted to Officer Meza to "go around."

29.     Meza then quickly drove his patrol vehicle westbound on Main Street, passed VERDUGO, and performed a U-turn.  Meza then began to drive back eastbound, heading directly at VERDUGO.

30.     Simultaneously, Officer Singh drove his vehicle up close behind VERDUGO from the east and got out of his car, blocking VERDUGO in from the rear.

31.     Simultaneously, defendant GARCIA took a "less lethal" shotgun from defendant SGT. VALDEZ, who had now arrived at the intersection in his own vehicle.  GARCIA ran west along the north flank of VERDUGO, on the opposite side of Singh's patrol vehicle from VERDUGO.

32.     Watching what was happening, defendant SGT. VALDEZ said "Ah shit, hold on guys" and drove forward.

33.     Noting that Meza was driving directly at him, VERDUGO turned and began to jog back eastward on Main Street, such that he was facing into the bright light of the rising sun.

34.     Defendant GARCIA shouted "get down, get down, less lethal, less lethal" and rapidly fired a "less lethal projectile" at VERDUGO from his north flank, driving VERDUGO into a narrow space between the retaining wall at the south edge of the sidewalk and the parked car of Officer Singh.

35.     VERDUGO stumbled somewhat upon being shot by the projectile but continued to head eastward, his path of travel now funneled into the space between Singh's patrol vehicle and the retaining wall.

36.     Defendant GARCIA fired a second projectile at VERDUGO.

37.     As he stopped his car and began to get out of the car, Defendant VALDEZ shouted "Get him! Get him! Get him!"

38.     Officer Singh drew his handgun and, from approximately 20 feet away, fired an initial volley of three shots at VERDUGO, who staggered, turned away from Singh, covered his face with his hands, and began to fall.

39.     Defendant VALDEZ, who had disembarked from his patrol car just east and a few feet to the south of SINGH's vehicle, then shot a handgun at VERDUGO roughly nine times as VERDUGO's back was turned, while VERDUGO fell to the ground.

//

//

//



40.     Defendant GARCIA fired a single shot at VERDUGO with a handgun as VERDUGO lay motionless, face down on the ground.



41.     Only 45 seconds elapsed from the time Defendant officers arrived at the scene to the time VERDUGO had been hit by nine bullets.

42.     VERDUGO was pronounced dead at the scene.

43.     Autopsy results indicate that two of the shots that hit VERDUGO were fatal: a shot that hit VERDUGO in the back and a shot that hit VERDUGO in the back of the neck.

## FIRST CAUSE OF ACTION

### [42 U.S.C. § 1983 – Deprivation of Due Process of Law]

### (By VERDUGO's Successor in Interest Against Defendant JANE DOE 2)

44.     Plaintiffs hereby incorporate by reference each and every allegation contained in paragraphs 1 through 43 of this complaint and makes each a part hereof as if set forth in full.

45.     Defendant JANE DOE 2 was given information by multiple 911 callers strongly suggesting that VERDUGO might be mentally ill.

46.     Specifically, JANE DOE 2 was told by the Rite Aid manager that he was unsure whether VERDUGO was "all right in the head," and was told by other 911 callers that VERDUGO was "yelling to himself" but was "not threatening anybody," was "walking right in the middle of the street," and was "taking his clothes off."

47.     Defendant JANE DOE 2 was also told by the Rite Aid manager that VERDUGO said he "was going to kill Officer Rodriguez or something."

48.     Defendant JANE DOE 2 then relayed to the other police officers that VERDUGO was threatening that "he was going to kill an officer.  The RP states he believes he said an Officer Rodriguez."

49.     Defendant JANE DOE 2 relayed to other police officers only the fact that VERDUGO was "yelling," omitting the fact that VERDUGO was yelling *to himself*.  Defendant JANE DOE 2 failed to tell the other police officers that callers

FIRST AMENDED COMPLAINT FOR DAMAGES

were concerned about whether VERDUGO was "all right in the head," and failed to tell the other police officers that VERDUGO was walking in the middle of the street.  Defendant JANE DOE 2 did relay the fact that VERDUGO was "starting to take his clothes off."

50.    In relaying only the most threatening bits of the information provided by 911 callers and by failing to convey information from multiple callers suggesting an obvious concern about VERDUGO's mental health, Defendant JANE DOE 2 engaged in affirmative conduct placing VERDUGO in danger.

51.    This action made VERDUGO extremely vulnerable to what ultimately occurred – namely, an extremely aggressive, rapid, and violent police response that made no attempt to accommodate VERDUGO's mental illness.

52.    By emphasizing conduct that seemed threatening without putting it in context of a suspicion that VERDUGO might be mentally ill or suffering mental instability at that point, JANE DOE 2 created the impression that VERDUGO was out to indiscriminately "kill an officer."  By not relaying multiple pieces of contextual information that VERDUGO was suffering from mental illness, JANE DOE 2 thereby created a far more dangerous situation than would have existed if JANE DOE 2 had simply repeated what the 911 callers actually reported, placing VERDUGO at risk of being considered a credible threat to police officers assigned to respond to the call.  Transmitting such erroneous and mistaken information by JANE DOE 2 contributed to and set the stage for the outcome complained of here, the needless death of Plaintiffs' Decedent MANUEL VERDUGO.

53.    In taking these actions, JANE DOE 2 acted with deliberate indifference to Verdugo's interest in personal security and deprived VERDUGO of his right to due process under the Fourteenth Amendment.  As a result, Plaintiffs' Decedent MANUEL VERDUGO suffered and continues to suffer general and special damages in an amount to be determined according to proof at trial.
///

## **SECOND CAUSE OF ACTION**

**[42 U.S.C. § 1983, Excessive Use of Force**

**Under the Fourth Amendment]**

**(By ESTATE OF MANUEL VERDUGO against SGT. VALDEZ,**

**OFFICER GARCIA, and DOES 3 through 5, inclusive)**

54.     Plaintiffs hereby incorporate by reference each and every allegation contained in paragraphs 1 through 53 of this complaint and makes each a part hereof as if set forth in full.

55.     After receiving the erroneous and misleading information purportedly based on the 911 call, Defendants SGT. VALDEZ, and OFFICER GARCIA, and DOES 3 through 5, inclusive, along with Officers Singh and Meza, arrived at the location of Imperial and Main, finding Plaintiffs' Decedent MANUEL VERDUGO. They could clearly see he was shirtless, and talking or yelling to himself, a clear manifestation that he was potentially mentally unstable at the time. Although armed at the time with a steak knife in each hand, upon seeing the officers VERDUGO immediately turned and attempted to walk away from them.

56.     In response, Officer Meza drove past him and circled back in his patrol vehicle, effectively kettling VERDUGO and cutting off his potential escape. Officer Meza then drove directly at VERDUGO, causing him to turn again and walk back in the direction of the other Defendant officers. Suddenly, despite the lack of any overt provocation or resistance on the part of VERDUGO, Defendants SGT. VALDEZ, and OFFICER GARCIA, along with Officer Singh, began firing unnecessarily and unreasonably at VERDUGO with their handguns and shotguns, firing roughly thirteen lethal rounds at him, causing him to fall to the ground gravely disabled, and continued firing even after he was disabled and prone on the ground.  Several of the rounds shot by Defendants SGT. VALDEZ and OFFICER

GARCIA struck and fatally injured VERDUGO, who expired within minutes due to the serious injuries inflicted upon him by said Defendants.

57.    Although Plaintiffs' Decedent VERDUGO was in possession of knives, he had not handled, aimed, pointed or threatened the officers with any weapon, and instead appeared to avoid contact with the Defendant officers, and only came into contact with the Defendant officers when Officer Meza drove him back into their midst, where they shot him, and after being gravely injured and lying face-down on the ground, Defendants continued to fire at him, inflicting the fatal gunshots.

58.    The use of the afore-described force against Plaintiffs' Decedent VERDUGO under such circumstances, including the manner and intensity of the attempt to corral and trap him, and the use of lethal force, when he posed no physical threat to the officers at the time, resulted from a combination of tactical malfeasance, particularly given their awareness of Decedent's mental disturbance and that he had not committed any serious criminal offense.  The use of said force, and particularly, the use of lethal force, under the circumstances presented to Defendants SGT. VALDEZ and OFFICER GARCIA was excessive and unreasonable, and deprived Plaintiff's Decedent of the rights, privileges, and immunities guaranteed him by the Fourth and Fourteenth Amendments to the U.S. Constitution, in violation of Title 42, U.S.C. § 1983.

59.    By reason of the afore-described acts and omissions of Defendants SGT. VALDEZ and OFFICER GARCIA, and each of them, Plaintiffs' Decedent MANUEL VERDUGO was killed, suffering great physical and emotional pain prior to his demise, as well as the loss of the enjoyment of life.

60.    The afore-described acts and omissions of Defendants SGT. VALDEZ and OFFICER GARCIA were done recklessly, knowingly, intentionally, and for the purpose of vexing and injuring Decedent and to maliciously deprive Plaintiffs of rights guaranteed them by the U.S. and California Constitutions and in

conscious disregard thereof; and by reason thereof, Plaintiffs claim exemplary and punitive damages from said Defendants in an amount to be proved.

61.     By reason of the afore-described acts and omissions of Defendants, Plaintiffs were required to retain an attorney to institute and prosecute the within action and to render legal assistance to Plaintiffs that they might vindicate the loss and impairment of their aforementioned rights; and by reason thereof Plaintiffs requests payment by Defendants of a reasonable sum for attorney's fees pursuant to Title 42 U.S.C. § 1988.

### **THIRD CAUSE OF ACTION**
**(Title 42, U.S.C. §§ 1983, 1988)**
**[Violation of Civil Rights by a Public Entity]**
**(By ESTATE OF MANUEL VERDUGO**
**Against Defendants CITY OF EL CENTRO,**
**and DOES 9 through 10, inclusive)**

62.     Plaintiffs hereby incorporate by reference each and every allegation contained in paragraphs 1 through 61 of this complaint and makes each a part hereof as if set forth in full.

63.     The CITY OF EL CENTRO has seen several serious incidents of police responding unreasonably in recent years in response to individuals acting erratically.

64.     In 2017, the CITY OF EL CENTRO paid a $4.1 million settlement – the largest police misconduct settlement in the history of the Southern District of California – to the family of Charlie Sampson, who died after EL CENTRO police officers spent hours ignoring Sampson's obvious symptoms of methamphetamine overdose.  Rather than render medical attention to Sampson, who was slurring and could not walk correctly, the EL CENTRO police officers mocked Sampson, claimed that he was "putting on a show," and even went so far as to tell a 911

dispatcher to ignore calls of distress from Sampson's family as they tried to request medical assistance.

65.     In 2016, EL CENTRO police officers were videotaped beating with batons an already compliant man, Elizardo Saenz, who had led police on a car chase.  EL CENTRO officers used multiple baton strikes against the already prone Saenz and used a police canine to bite him, in spite of the fact that Saenz was not, at that time, making any attempt to resist.

66.     In 2014, an EL CENTRO police officer was a member of a law enforcement task force that fired more than 50 shots at a man named Marc Anthony Ayala even after Ayala raised his hands to surrender, according to the taxi driver who was driving the car in which Ayala was killed. Ayala was hit by 37 bullets.  Like VERDUGO, Ayala was believed to have made threats against law enforcement prior to the final encounter, apparently encouraging this massive over-response on the part of EL CENTRO officers.

67.     Law enforcement interaction with individuals with mental health challenges was admittedly a particular area of weakness for the CITY OF EL CENTRO at the time of the shooting of VERDUGO.

68.     EL CENTRO's Police Department participated along with the Calexico Police Department, the Imperial County Probation Department, and the Imperial County Sheriff's Department in the development of a 2020 Imperial County Roadmap Report on training deficiencies and inadequate responses to 5150 incidents.  The Roadmap explicitly noted that "Many LEOs in the County stated they felt ill equipped to provide support during [mental health] crisis event[s] and to make 5150 determinations."

69.     The Roadmap also noted that training on handling mental health crises is "an intensive time commitment only available at limited times, which did not always fit within officers' schedules. . . . Therefore CIT [Crisis Intervention Team] attendance was often limited in the County."

70.     Additionally, the Roadmap noted that "LEOs do not feel they have adequate training on the 5150 criteria, hindering their ability to recognize gravely disabled individuals," and impliedly admitting their responses were less than adequate.

71.     Finally, the Roadmap stated that although law enforcement officers play a critical role in the 5150 process, "current training for this group does not appear to adequately prepare first responders to deal with a mental health crisis."

72.     On information and belief, Plaintiffs allege the CITY OF EL CENTRO, and DOES 9 through 10, inclusive, through its police department, with deliberate indifference and conscious and reckless disregard to the safety, security and constitutional and statutory rights of VERDUGO and others similarly situated, including the right to be free from excessive force, maintained, enforced, tolerated, ratified, permitted, acquiesced to, promulgated, and applied, among others, the following policies, practices and customs:

    a.     Failing to adequately train, supervise, and control deputies in the safe interaction with, detention of, and the appropriate uses of force, in regard to handling situations with people such as Plaintiff's Decedent VERDUGO, who are disabled as the result of mental illness and whose behavior is impacted by such illness;

    b.     Failing to train dispatchers (such as JANE DOE 2) to adequately and fully appraise themselves of details of an event that are indicators of the likelihood that a subject or suspect might be mentally ill, and potentially can affect the nature of such encounter, and to properly, faithfully, and adequately transmit such details to the officers assigned to respond;

    c.     Failing to set up a system for rapid response to situations potentially involving an encounter with a mentally disturbed person, where intervention by a highly trained and skilled person might alleviate the need

for the use of force, particularly lethal force, by resorting to alternative methods including de-escalation, communication, or specialized help;

d.     Failing to set up systems to prevent abuse by officers including the failure to properly investigate timely and, when appropriate, discipline uses of force;

e.     Condoning and encouraging officers in the belief that they can violate the rights of persons such as VERDUGO with impunity, knowing that their conduct will not adversely affect their opportunities for retention, promotion, and other employment benefits;

f.     Failing to terminate or otherwise discipline officers who abuse their authority; and

g.     Encouraging and/or allowing deputies to treat mentally disabled persons such as VERDUGO as criminals rather than potential patients.

73.     These acts were part of a widespread municipal policy, practice and custom of the Defendant CITY OF EL CENTRO, and DOES 9 through 10, inclusive, that failed to consider that despite the knowledge that encounters with mentally disturbed individuals are common, and often occur, and the foreseeable likelihood of a tragic or traumatic result might occur based on the level or adequacy of training officers receive, and that if the officers were properly trained the likelihood of a serious injury or death could be seriously reduced.

74.     These polices, practices and customs, separately and together, proximately caused  injury and death to VERDUGO because Defendants SGT. VALDEZ, and OFFICER GARCIA, along with Officers Singh and Meza, lacked sufficient training in how to respond to encounters with mentally disturbed persons.

75.     Furthermore, on or about December 29, 2019, and for some time prior thereto, Defendants CITY OF EL CENTRO and DOES 9 through 10, inclusive, maintained and enforced a policy, custom and practice of negligently employing,

training, assigning, and supervising sworn officers of the EL CENTRO Police Department who are predisposed to violence and dishonesty, and of permitting and ratifying violations, under color of law, of the Fourth, and Fourteenth Amendments to the U.S. Constitution by its sworn officers.

76. Furthermore, on or about December 29, 2019, and for some time prior thereto, Defendants CITY OF EL CENTRO and DOES 9 through 10, inclusive, failed to properly train, assign, supervise, and guide their officers, in regards to the use of deadly force, use of less-lethal weapons, apprehension tactics, and appropriate methods for dealing with drug induced or mentally disturbed individuals, and for some time prior thereto and since, have condoned, tolerated and accepted, and continue to condone, tolerate, and accept the excessive use of force and inappropriate tactics, and allow police misconduct to escape detection, the deficient supervision of line or patrol officers, and in particular, the use of unnecessary and unreasonable lethal force by its sworn officers.

77. Furthermore, on or about December 29, 2019, and for some time prior thereto, Defendants CITY OF EL CENTRO, and DOES 9 through 10, inclusive, failed to fully and objectively investigate claims, reports or allegations of misconduct by the officers under their command.  In particular, the CITY OF EL CENTRO, and DOES 9 through 10 either failed to conduct a serious investigation of the death of Plaintiffs' Decedent MANUEL VERDUGO by Defendants SGT. VALDEZ, and Officer GARCIA, along with Officers Singh and Meza, despite the loss of life that resulted, or actually approved of the conduct herein, and by their actions acquiesced, condoned, tolerated, or ratified and approved of such violent response to the 911 call in order to protect said officers and avoid any discipline or other blemishes on their record.

78. Plaintiffs are informed and believe that during the course of their internal investigation of the incident herein, DOES 9 through 10, who are officials with policy-making authority within the EL CENTRO Police Department, were

aware of and disregarded statements of neutral disinterested civilian witnesses that contradicted the statements of the involved officers herein, and specifically that the eyewitnesses claimed that Plaintiffs' Decedent VERDUGO appeared to be mentally disturbed and likely posed no threat to the Defendant officers, and yet said Defendants CITY OF EL CENTRO, and DOES 9 through 10 still found that no misconduct or acts in contravention to official department policy had occurred. By their acts in approving and ratifying the conduct of the Defendant officers herein, Defendants CITY OF EL CENTRO, and DOES 9 through 10, failed to take an objective, unbiased look at what occurred.

79.     Defendants CITY OF EL CENTRO, and DOES 9 through 10, inclusive, as official policy makers for Defendant CITY OF EL CENTRO, were the moving force behind the violation of constitutional rights and damages complained of herein by Plaintiffs.

80.     Furthermore, Defendants SGT. VALDEZ, and OFFICER GARCIA had no incentive to avoid unnecessary and excessive uses of force because they knew that their unnecessary use of lethal force would go unchallenged by supervisors and fellow officers.  These interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and thereby encouraged Defendants SGT. VALDEZ, and OFFICER GARCIA to commit the wrongful acts against VERDUGO and therefore acted as a moving force and were, separately and together, direct and proximate causes of the constitutional deprivation and injuries to VERDUGO.

81.     As a direct and proximate result of the foregoing, VERDUGO sustained injury and damage as alleged above, resulting in his death.

//

//

//

FIRST AMENDED COMPLAINT FOR DAMAGES

### **FOURTH CAUSE OF ACTION**

**[Violation of Bane Act, Cal. Civ. Code § 52.1]**

**(By ESTATE OF MANUEL VERDUGO Against Defendant**

**CITY OF EL CENTRO, CITY OF EL CENTRO, SGT.**

**VALDEZ, OFFICER GARCIA, and DOES 2 through 10,**

**inclusive,)**

82.     Plaintiffs hereby incorporate by reference each and every allegation contained in paragraphs 1 through 81 of this complaint and makes each a part hereof as if set forth in full.

83.     Based on the violent and unjustified use of force, Defendants CITY OF EL CENTRO, SGT. VALDEZ, and OFFICER GARCIA, and DOES 2 through 10, inclusive, interfered with VERDUGO's constitutional right to be free from unreasonable seizure, as guaranteed by the Fourth Amendment of the U.S. Constitution. By knowingly inflicting substantial pain on VERDUGO without justification, Defendants committed the constitutional violation by intimidation and coercion.

84.     Defendants CITY OF EL CENTRO, SGT. VALDEZ, OFFICER GARCIA and DOES 2 through 10, inclusive, took this action without justification. Defendants responded to a situation in which VERDUGO was not threatening anyone and immediately escalated it to the point of using overwhelming, deadly force.  As a result, Defendants CITY OF EL CENTRO, SGT. VALDEZ, OFFICER GARCIA and DOES 2 through 10, inclusive, acted with reckless disregard of VERDUGO's constitutional rights.

85.     Defendants' unlawful conduct directly and proximately caused the violent death of Manuel VERDUGO. As a result, Defendants violated section 52.1 of the California Civil Code.

86.     Plaintiffs are entitled to the following remedies against Defendants CITY OF EL CENTRO: compensatory damages in an amount to be proven at trial; and statutory damages set forth by sections 52 and 52.1(b) of the California Civil Code. These statutory damages include exemplary and treble damages. Further, Plaintiffs are entitled to recover their costs and attorney fees.

## FIFTH CAUSE OF ACTION

**(Wrongful Death/Negligence, C.C.P. section 377.60,Cal. Gov. Code § 815.2)**

**[By Plaintiffs ESTATE OF MANUEL VERDUGO,  STACEY VERDUGO, and SACRAMENTO VERDUGO, against Defendants CITY OF EL CENTRO, SGT. VALDEZ, OFFICER GARCIA, and DOES 2 through 10, inclusive]**

87.     Plaintiffs hereby incorporate by reference each and every allegation contained in paragraphs 1 through 86 of this complaint and makes each a part hereof as if set forth in full.

88.     On or about December 29, 2019, and at all times mentioned herein, Plaintiffs' Decedent, MANUEL VERUDGO, was subjected to use of deadly force and arrest by Defendants CITY OF EL CENTRO, SGT. VALDEZ, OFFICER GARCIA, and DOES 2 through 10, inclusive.  Defendants, and each of them, were negligent in the performance of their duties and obligations as duly sworn police officers under the totality of circumstances confronting them at the time, and this negligence caused the needless death of Plaintiffs' Decedent VERDUGO, thereby causing Plaintiffs' injuries.  Defendants failed to comply with their above stated police tactics and duties and their conduct was at all times mentioned herein, below the standard of care for reasonable police officers, and this negligence caused the injuries and damages alleged herein.

89.     Said Defendants' actions or failure to act, and each of them, fell below the minimal standard of duty of persons in their profession, and were therefore

negligent in the performance of their duties as police officers and this negligence caused plaintiffs' injuries.  Defendants CITY OF EL CENTRO, and DOES 9 through 10, failed to comply with their supervisory duties to properly select, train, guide, and monitor and their conduct and was at all times mentioned herein below the standard of care for reasonably trained police officers, and this negligence caused the injuries and damages alleged herein.

90.     Defendants owed a duty of reasonable care to VERDUGO.  Based on the conduct alleged above, Defendants CITY OF EL CENTRO, SGT. VALDEZ, OFFICER GARCIA and DOES 2 through 10, inclusive, breached that duty of reasonable care.  This negligence directly and proximately caused VERDUGO's death.

91.     As a direct and legal result of the aforesaid negligence, carelessness and unskillfulness of Defendants CITY OF EL CENTRO, SGT. VALDEZ, OFFICER GARCIA and DOES 2 through 10, and each of them, Plaintiffs' Decedent VERDUGO was killed, and Plaintiffs suffered the damages as alleged above.

## SIXTH CAUSE OF ACTION

**(Wrongful Death/Battery, C.C.P. section 377.60,Cal. Gov. Code § 815.2)**

**[By Plaintiffs ESTATE OF MANUEL VERDUGO,  STACEY VERDUGO, and SACRAMENTO VERDUGO, against Defendants CITY OF EL CENTRO, SGT. VALDEZ, OFFICER GARCIA, and DOES 2 through 10, inclusive]**

92.     Plaintiffs hereby incorporate by reference each and every allegation contained in paragraphs 1 through 91 of this complaint and makes each a part hereof as if set forth in full.

93.     On or about December 29, 2019, and at all times mentioned herein, Plaintiffs' Decedent, MANUEL VERUDGO, was subjected to the use of deadly force by Defendants CITY OF EL CENTRO, SGT. VALDEZ, OFFICER

GARCIA and Does 2 through 10.  Said use of lethal force constituted an unlawful touching, or battery, without justification or legal cause.

94.     As a direct and legal result of the aforesaid battery of Defendants CITY OF EL CENTRO, SGT. VALDEZ, OFFICER GARCIA and Does 2 through 10, and each of them, Plaintiffs' Decedent VERDUGO was killed, and Plaintiffs suffered the damages as alleged above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.  General damages in an amount to be proved;

2.  Medical, doctor, psychiatric, pharmaceutical, funeral and incidental expenses to be proved;

3.  Punitive damages (against Defendants SGT. VALDEZ, OFFICER GARCIA, and DOES 2 through 10, inclusive);

4.  Reasonable attorney fees (pursuant to 28 U.S.C. §1988, 42 U.S.C. § 12205, and California Civil Code § 52.1);

5.  Costs incurred in this lawsuit;

6.  Prejudgment interest; and

7.  Such other relief as the Court deems proper.

Respectfully submitted,

Dated: October 27, 2021                    _____/s/Jorge Gonzalez
                                           Jorge Gonzalez (SBN 100799)
                                           Attorney for Plaintiffs

Dated: October 27, 2021                    _____/s/Alex Coolman
                                           Alex Coolman (SBN 250911)
                                           Attorney for Plaintiffs

FIRST AMENDED COMPLAINT FOR DAMAGES

1

## **DEMAND FOR JURY TRIAL**

2          Plaintiffs hereby request a jury trial in this action.

3    Dated: October  27, 2021                                   /s/Jorge Gonzalez
                                                    Jorge Gonzalez (SBN 100799)
4                                                   Attorney for Plaintiffs

5    Dated: October 27, 2021                                    /s/Alex Coolman
                                                    Alex Coolman (SBN 250911)
6                                                   Attorney for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES